IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-13-727-F |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff applied for benefits in November 2007, and these applications were denied on April 28, 2008. Plaintiff did not administratively appeal this decision. Plaintiff filed new applications for benefits on May 20, 2010. In these applications, Plaintiff alleged she was

1

disabled beginning January 1, 2009. However, at her administrative hearing, Plaintiff amended her disability onset date to October 1, 2009.

Plaintiff testified at the administrative hearing conducted October 3, 2011, before Administrative Law Judge O'Bryan ("ALJ") that she was 45 years old, she had a tenth grade education, and she lived with her 19-year-old son. Plaintiff testified that she was unable to work due to constant back pain resulting from degenerative disc disease and bulging discs.

Plaintiff described previous work as a self-employed CB repairer, a job that she stated required her to climb up the side of trucks to install equipment and required 13 to 16 hours of sitting per day. Plaintiff testified that she had numbness in her legs and had to alternate sides and shift her weight when sitting. Plaintiff estimated she could sit for 10 to 15 minutes, stand for 5 to 10 minutes, and walk ½ block. She stated she took narcotic pain medication and that she was able to perform household chores with breaks and attend church.

She stated she also could not work due to bladder problems resulting from "mesh sling" surgery. She took medication for an overactive bladder. She had migraine headaches occurring two times per month, bipolar disorder and depression for which she took medications, and an autoimmune disease causing irregular skin pigmentation. She stated she took a "chemo pill," Methotrexate, for this latter condition which caused severe side effects for two days every week, including diarrhea, headaches, sweating, and body aches. (TR 89). Plaintiff stated she had been taking Xanax® for anxiety since the age of 19 and that the medication caused side effects, including an inability to remember her name. (TR 88).

The ALJ issued a decision on March 9, 2012, in which the ALJ determined that

Plaintiff was not disabled within the meaning of the Social Security Act. Following the agency's well-established sequential evaluation procedure, the ALJ found at step one that Plaintiff had not worked since her alleged disability onset date of October 1, 2009. At step two, the ALJ summarized the extensive medical record[1] and found that Plaintiff had severe impairments due to back problems, degenerative disc disease, obesity, anxiety, mood disorder, and high blood pressure. (TR 54). At step three, the ALJ found that Plaintiff's impairments were not so severe as to meet or equal the requirements of an impairment or combination of impairments deemed disabling *per se* under the agency's Listing of Impairments.

In connection with this finding, the ALJ found that Plaintiff's mental impairments had resulted in mild restrictions of daily living activities, moderate restrictions in social functioning, moderate restrictions in the ability to concentrate, persist, or maintain pace, and "one to two" episodes of decompensation of extended duration. (TR 60). At the fourth step, the ALJ found that despite her impairments Plaintiff had the ability to perform work at the sedentary exertional level, limited to jobs allowing her to relate to others on a superficial basis and not relate at all to the general public. (TR 61).

The ALJ then found at step four that Plaintiff's impairments and residual functional capacity ("RFC") for work prevented her from performing any of her previous jobs. Reaching step five, the final step of the administrative evaluation process, the ALJ found that

---

[1]Unfortunately, the administrative record contains duplicate records from several treating and examining providers.

Plaintiff was capable of performing other work available in the economy. In making this finding, the ALJ applied the agency's Medical-Vocational Guidelines, commonly known as the "grids," as a framework. The ALJ found that if Plaintiff had the RFC to perform the full range of sedentary work the grids' Rules 201.25 and 201.26 would direct a finding of nondisability. Because "the additional limitations" imposed upon her RFC for sedentary work had "little or no effect on the occupational base of unskilled sedentary work," the ALJ found that Plaintiff was not disabled "under the framework of this rule." (TR 65).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052

4

(citations, internal quotation marks, and brackets omitted).

III. Analysis of Disabling Pain Complaint

Plaintiff first contends that the ALJ erred by not evaluating all of the medical and nonmedical evidence in connection with her complaint of disabling pain. Defendant Commissioner responds that no error occurred in connection with the ALJ's credibility determination and that the credibility determination is supported by substantial evidence in the record.

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." Id. In this case, the ALJ found that Plaintiff had made such a showing.

As a result of this finding, the ALJ was required to consider and determine whether, considering all of the evidence, both objective and subjective, the claimant's pain was in fact disabling. Luna v. Bowen, 834 F.2d 161, 163-164 (10th Cir. 1987). To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ must consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna, 834 F.2d at 165-166; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(listing seven factors relevant to credibility analysis); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 3 (same).

The ALJ's decision reflects a detailed and adequate summary of the pertinent medical evidence as well as consideration of Plaintiff's testimony at the hearing and other nonmedical evidence in the record. The ALJ addressed several of the the Hargis factors in the decision and provided reasons for finding that Plaintiff's subjective statements were not entirely credible. For instance, the ALJ noted that Plaintiff had reported she worked at a craft show in December 2009, that Plaintiff made statements to emergency room personnel in July 2010 that were not truthful with respect to scheduled medical procedures, that she reported activities to treating and examining physicians that were not consistent with her disabling pain complaints, including working at a craft show, traveling to care for family members, extensive use of tanning beds, and leaving her home for a week, that she had been inconsistent with medical treatment and non-compliant with medications, and that she had

6

exhibited drug-seeking behavior by (1) requesting narcotic medications from multiple sources and (2) denying she was taking narcotic pain medications although she had consistently been receiving narcotic pain medications from treating physicians. These reasons for discounting Plaintiff's credibility are well supported by the record. The ALJ was not required to discuss each of the relevant Hargis factors, and the discussion set forth in the ALJ's decision was adequate for the court to discern the reasons for the credibility determination. No error occurred in this regard.

IV. Analysis of Treating Physician's Opinion

Plaintiff next contends that the ALJ erred in failing to apply the proper standard in evaluating the opinion of Plaintiff's treating physician, Dr. Stutzman. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2).

The only statement that Plaintiff references is a statement by Dr. Stutzman appearing in a letter dated May 21, 2010, and addressed "To Whom It May Concern." (TR 698). In this letter, Dr. Stutzman states that Plaintiff "and her son . . . are patients in our clinic. They both suffer from multiple health problems and would benefit greatly living close to a family member who would be able to assist them with transportation, and to help them care for their medical needs." (TR 698).

This statement has none of the attributes of a physician's medical opinion. It does not

7

discuss Plaintiff's functional limitations or even set forth a definitive diagnosis of her medical impairment(s). As such, the statement was not entitled to controlling weight. Nor does the vague statement provide any probative evidence that should have been expressly evaluated by the ALJ in the decision. See Cowan v. Astrue, 552 F.3d 1182, 1189 (10th Cir. 2008)(physician's "brief statement" on medical form was not "true medical opinion" because it did not contain physician's "judgment about the nature and severity of [claimant's] physical limitations, or any information about what activities [claimant] could still perform"). Plaintiff stated that she did not own a vehicle (TR 218) and a third party who may have been a case worker noted that Plaintiff and her son needed "a letter to whom it may concern" in order to assist her and her son in obtaining federal housing assistance for the purpose of securing a "rent house next to" her parents' home. (TR 699). Thus, it appears Dr. Stutzman's statement was intended to assist Plaintiff with obtaining housing due to a lack of transportation. The statement was not indicative of any functional limitations resulting from medical impairments, and the ALJ did not err by failing to expressly consider it.

V. RFC

Next, Plaintiff contends that the ALJ's RFC determination did not take into consideration Plaintiff's "severe impairments of headaches, diabetes and, most importantly, her constant problem with kidney stones." Plaintiff's Opening Brief, at 12. However, Plaintiff does not point to any evidence in the record indicating these conditions caused functional limitations that would limit Plaintiff's ability to work. Nothing in the medical record reflects that Plaintiff's occasional migraine headaches or episodic treatment for kidney

8

stones occurred frequently enough as to interfere with her ability to work. The record shows Plaintiff occasionally sought medical treatment for migraine headaches and kidney stones and that she was prescribed medications for these conditions. She testified that she experienced two migraine headaches per month. Plaintiff's treating urologist, Dr. Renouard, noted in May 2010 that Plaintiff had experienced "a decreased amount of [kidney] stones since she [had] managed her diet" and lost a "significant amount" of weight. (TR 266). Plaintiff had kidney stones removed in surgery conducted in May 2010 (TR 266), and there are no records of further treatment for kidney stones. Moreover, after Dr. Renouard conducted a surgical procedure in March 2010 to install a "transobturator sling" (TR 283), he noted in May 2010 that Plaintiff "no longer has stress urinary incontinence." (TR 266). Nothing in the medical record reflected any functional limitations resulting from Plaintiff's diabetes, for which she was treated with medications. In May 2010, Dr. Renouard noted that after Plaintiff lost "over 70 pounds" her previously elevated hemoglobin A1C had "now returned to normal level." (TR 283). The ALJ did not err by failing to expressly consider additional functional limitations related to migraine headaches, kidney stones, or diabetes in determining Plaintiff's RFC for work.

Plaintiff also contends that the ALJ's decision does not include a proper evaluation of the effects of Plaintiff's obesity upon her ability to work. However, nothing in the record reflects that Plaintiff's obesity had an additional adverse impact on her ability to work aside from the functional limitations resulting from her other physical impairments. The ALJ's decision reflects consideration of Plaintiff's testimony concerning her functional limitations

9

and the objective medical evidence. The ALJ found that the evidence overall was consistent with her ability to perform sedentary work and that Plaintiff's allegations of disabling pain and limitations were not entirely credible for reasons that are well supported by the record. In February 2012, Plaintiff reported to her treating physician's assistant that she was doing well and had no complaints. (TR 1342, 1354). No error occurred in this regard.

VI. Consideration of GAF Scores

Plaintiff contends that the ALJ erred by failing to consider and evaluate Plaintiff's low global assessment of functioning ("GAF")[2] scores appearing in the record. Plaintiff recognizes in her opening brief that a GAF score alone is not evidence of an impairment that seriously interferes with a claimant's ability to work. See Lee v. Barnhart, 117 Fed.App'x. 674, 678 (10th Cir. 2004)(unpublished order)("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work."). However, Plaintiff contends that Plaintiff was "continuously" assessed low GAF scores that were probative of the severity of her mental impairments and should have been evaluated by the ALJ in the decision.

In the decision, the ALJ summarized Plaintiff's testimony, including her statement

---

[2] The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32).

that she had been assessed as having a GAF of 32 on one occasion. The ALJ found that Plaintiff had severe mental impairments due to anxiety and a mood disorder. Consistent with the RFC assessment submitted by the agency's medical consultant, Dr. Goodrich, in February 2011 (TR 959), the ALJ found that Plaintiff's RFC for work was limited by an inability to relate to the general public and the ability to relate to others only on a superficial work basis. (TR 61).

Plaintiff attached to her opening brief a summary of the medical evidence in the record, but Plaintiff did not cite to any evidence in the record to support this particular argument. Having combed the extensive record, the record indicates Plaintiff only briefly sought mental health treatment on two occasions. In September 2010, when Plaintiff sought treatment at a mental health clinic, a licensed professional counselor, Ms. Chaney, conducted a clinical assessment of Plaintiff. The counselor's diagnostic assessment was bipolar disorder type I with a current GAF score of 32. (TR 843-848). Following this initial assessment, Plaintiff saw a psychiatrist at the clinic, Dr. Ahn, on only two occasions in November 2010 and January 2011. Dr. Ahn prescribed medications. (TR 856, 1301). There is no record of further mental health treatment until June 2011, when Plaintiff again sought treatment at the same clinic and admitted she had not been compliant with her prescribed medications since January 2011. (TR 1293). She was prescribed medications for bipolar disorder type I and anxiety disorder not otherwise specified. (TR 1303). Dr. Ghaznavi, her treating psychiatrist, noted a GAF assessment of 37 at the time of Plaintiff's initial assessment. (TR 1304). A licensed professional counselor, Mr. Brockelman, assessed

Plaintiff at the same time with a GAF of 51. (TR 1323). There is no record of further treatment of Plaintiff at the mental health clinic.

It appears from the record that Plaintiff's complaints of increasing depression and anxiety improved quickly following these two brief instances in which she sought mental health treatment. In February 2012, Plaintiff reported to her treating physician's assistant, Ms. Binder, that she was "doing well and . . . having no problems" and that she was doing well as long as she was compliant with her medications, which included anti-anxiety medication and pain mediation. (TR 1352, 1354). Ms. Binder noted that Plaintiff denied any mental or physical complaints. Under these circumstances where the record does not contain evidence of persistent mental health treatment or complaints or any indication that Plaintiff's mental impairments interfered with her ability to work beyond the limitations ascribed by the ALJ in the RFC finding, the ALJ did not err in failing to expressly consider the GAF scores assessed to Plaintiff in September 2010 and June 2011.

VII. Vocational Testimony

Plaintiff contends that the ALJ erred by failing to obtain vocational testimony at step five. At step five, the burden shifts to the Commissioner to show the claimant has the RFC to perform other work in the national economy in consideration of her age, education, and work experience. Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005). "The claimant is entitled to disability benefits only if [s]he is not able to perform other work." Bowen v. Yuckert, 482 U.S. 137, 142 (1987).

The Social Security Administration has adopted Medical-Vocational Guidelines,

commonly known as grids, which are applied to determine whether a claimant is disabled based on his or her RFC category, age, education, and work experience. See 20 C.F.R. pt. 404, subpt. P, app. 2. In some instances, the grids can be used to satisfy the Commissioner's burden of proof at the fifth step of the sequential evaluation process. "The grids should not be applied conclusively in a particular case, however, unless the claimant [can] perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." Hargis, 945 F.2d at 1490. If a claimant has pain that "interfere[s] with the ability to work" then reliance on the grids is foreclosed, and in those circumstances the grids may be used only as a framework to determine whether sufficient jobs can be performed within the claimant's RFC. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).

The ALJ found that Plaintiff's ability to perform the full range of sedentary work was limited only with respect to her ability to relate to others and to the general public. Noting that the grids prescribed a finding of "not disabled" for an individual of Plaintiff's age, education, and work history and who could perform the full range of sedentary work, the ALJ further found that the additional limitations ascribed to her RFC would have "little or no effect on the occupational base of unskilled sedentary work." (TR 65).

Plaintiff contends that the evidence of record showed she did not have the ability to sustain the mental requirements for sedentary work on a sustained basis. However, Plaintiff refers only vaguely to "[t]he treatment records of Dr. Stutzman" and "the testimony of Ms. Walls" in support of this argument. Plaintiff's Opening Brief, at 14. The record does not

13

indicate that Plaintiff persistently sought mental health treatment or that she sought any medical treatment for urinary incontinence after March 2010. The record indicates that Plaintiff's back pain and mental impairments improved with medications. The ALJ did not err in applying the grids as a framework under these circumstances.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before June 18th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 29th day of May, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE